

**ORDERED in the Southern District of Florida on April 2, 2026.**

*Scott M. Grossman*
_____
**Scott M. Grossman, Chief Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

JOHN PAPAGNO,                                         Case No. 24-16005-SMG

      Debtor.                                            Chapter 7

_____/

### ORDER (I) GRANTING MOTION TO REOPEN; (II) GRANTING IN PART AND DENYING IN PART MOTION FOR CONTEMPT; AND (III) DENYING (A) MOTION TO STAY EVICTION JUDGMENT, (B) MOTION FOR DECLARATORY RELIEF, AND (C) MOTION TO CONSOLIDATE HEARINGS

NOLA Lofts Condominium I violated the automatic stay when it recorded a claim of lien under Fla. Stat. § 718.116(5) after John Papagno had filed for bankruptcy. As a result, Mr. Papagno is asking this Court to declare NOLA's lien invalid, sanction NOLA for violating the automatic stay and discharge injunction, and enjoin NOLA from proceeding with other state court litigation against him. Although the Court is determining that NOLA violated the automatic stay, an evidentiary hearing will be required to determine whether that violation was willful

and if so, whether Mr. Papagno was injured, and if so, what damages, if any, he suffered. That, however, is the extent of the consequences of NOLA having recorded its claim of lien in violation of the automatic stay.

NOLA's having recorded its claim of lien in violation of the automatic stay does not, however, eliminate NOLA's statutory lien rights under Florida Statutes, Chapter 718 and NOLA's condominium declaration. Nor does NOLA's post-discharge efforts to enforce its lien rights in rem against Mr. Papagno's condominium unit violate the discharge injunction. And so long as NOLA continues to pursue solely in rem relief against Mr. Papagno's property in respect of any claim it had against him before he filed for bankruptcy, it is not engaging in any conduct that this Court can or should enjoin from proceeding in state court. This includes NOLA's efforts to evict Mr. Papagno for allegedly violating the condominium association rules and Florida law.

## I. Background.

Debtor John Papagno owns condominium unit 404 of Nola Lofts Condominium I, located at 313 NE 2nd Street Unit 404, Fort Lauderdale, Florida 33301. On June 17, 2024, he filed this voluntary chapter 7 bankruptcy case[1] without an attorney. He received a discharge on September 24, 2024.[2] The chapter 7 trustee then filed a report of no distribution, certifying that there was no non-exempt property available to distribute to creditors.[3] His case was then closed on January 30, 2025.[4]

---

[1] *See* Dkt. No. 1.
[2] Dkt. No. 23.
[3] Dkt. No. 26.
[4] Dkt. No. 27.

On June 20, 2024, however – three days *after* Mr. Papagno had filed his bankruptcy petition – NOLA recorded in the Broward County property records a claim of lien under Florida Statutes § 718.116(5), as a predicate to commencing an action in state court to collect unpaid assessments.[5] NOLA does not dispute that it recorded its claim of lien after Mr. Papagno filed for bankruptcy and that having done so violated the automatic stay.

Indeed, in an apparent acknowledgment that its claim of lien recorded in violation of the automatic stay was void,[6] on October 16, 2024 – after Mr. Papagno had received his discharge – NOLA recorded a second claim of lien and issued a 45-day demand letter to Mr. Papagno. The letter specified in bold that:

> **The Association is not seeking any personal or deficiency judgment against you as a result of your discharge in Case Number 24-16005-SMG. However, the discharge does not affect the Association's lien and foreclosure rights as the Association's has a continuing lien on your property and the Association's lien was not stripped, avoided or eliminated in the bankruptcy.**[7]

On January 16, 2025, NOLA then filed in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida a one count foreclosure complaint against Mr. Papagno and any unknown occupants of his condominium unit.[8] Consistent with its October 16 letter, the complaint specified that as a result of Mr. Papagno's bankruptcy discharge, NOLA would not seek any deficiency against him personally.[9]

---

[5] Dkt. No. 37 at 11.

[6] *See Lee v. U.S. Bank Nat'l Ass'n*, 102 F.4th 1177, 1180 (11th Cir. 2024) ("actions taken in violation of the automatic stay are void and without effect") (quoting *U.S. v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006)).

[7] Dkt. No. 37 at 15–17; *see* Dkt. No. 42, ¶ 4.

[8] Case No. CACE-25-000697; *see* Dkt. No. 37 at 18–32; *see also* Dkt. No. 42, ¶ 5.

[9] Dkt. No. 37 at 22; *see also* Dkt. No. 42, ¶ 5.

About eight months later, NOLA filed a second state court action against Mr. Papagno and any unknown occupants of his condominium unit.[10] This action sought injunctive relief to remove unapproved occupants residing in the unit, to prevent unlawful and improper use of the unit in violation of fire codes, and to compel Mr. Papagno to repair his unit's air conditioner.[11]

Against this backdrop, Mr. Papagno now asserts (again without counsel) that NOLA has engaged in a continuing pattern of post-petition and post-discharge conduct – including lien recordings, payment demands, foreclosure proceedings, and eviction efforts – that violated the automatic stay and discharge injunction. As a result, he filed the following five motions, together with an affidavit[12] containing multiple exhibits:

1. *Debtor's Emergency Motion to Reopen Chapter 7 Case Pursuant to 11 U.S.C. § 350(b) and Rule 5010 for the Purpose of Enforcing the Automatic Stay, the Discharge Injunction, and Related Relief* (Motion to Reopen);[13]

2. *Debtor's Motion for Contempt for Violations of the Automatic Stay and Discharge Injunction* (Motion for Contempt);[14]

3. *Emergency Motion to Halt and Stay Enforcement of Eviction Judgment and for Immediate Injunctive Relief* (Motion to Stay Eviction Judgment);[15]

4. *Debtor's Motion for Declaratory Relief and for Systemic Sanctions Under the Court's Inherent Authority* (Motion for Declaratory Relief);[16] and

---

[10] Case No. CACE-25-016406; *see* Dkt. No. 37 at 47–58; *see also* Dkt. No. 42, ¶ 20.
[11] Dkt. No. 37 at 47–58; *see also* Dkt. No. 42, ¶ 20.
[12] Dkt. No. 30, as amended by Dkt. No. 37.
[13] Dkt. No. 29.
[14] Dkt. No. 31.
[15] Dkt. No. 32, as amended by Dkt. No. 38.
[16] Dkt. No. 33, as amended by Dkt. No. 39.

> 5. *Debtor's Motion to Consolidate Hearings on Pending Motions for Judicial Economy* (Motion to Consolidate Hearings).[17]

The Court set a hearing on these motions for March 4, 2026,[18] before which NOLA filed an omnibus response.[19] At the conclusion of the hearing, the Court took the matter under advisement. After reviewing the motions, affidavits, exhibits, and NOLA's response, and considering the arguments made by the parties at the hearing, for the reasons that follow the Court will grant the Motion to Reopen, grant in part and deny in part the Motion for Contempt, deny as moot the Motion to Consolidate Hearings, and deny on the merits the Motion to Stay Eviction Judgment and the Motion for Declaratory Relief.

## II.   Jurisdiction.

This Court has jurisdiction of, and may hear and determine, Mr. Papagno's bankruptcy case under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(b), and the District Court's standing order of reference.[20] Enforcement of the automatic stay and discharge injunction are core proceedings under 28 U.S.C. § 157(b)(2), as to which this Court can enter final orders and judgments.

## III.   Discussion.

A.   <u>Motion to Reopen</u>.

Mr. Papagno seeks to reopen his Chapter 7 case to address these alleged violations of the automatic stay and discharge injunction. Under 11 U.S.C. § 350(b), "[a] case may be reopened in the court in which such case was closed to administer

---

[17] Dkt. No. 34.
[18] Dkt. Nos. 35, 40.
[19] Dkt. No. 42.
[20] Dist. Ct. Admin. Order 2024-84 (Nov. 1, 2024); *see also* Dist. Ct. Loc. R. 87.2.

assets, to accord relief to the debtor, or for other cause."[21] Because Mr. Papagno's other motions – if successful – might result in some relief accorded to him, it is appropriate to reopen this case to adjudicate those motions. The motion to reopen will therefore be granted.

B.     Motion for Contempt.

Mr. Papagno alleges that NOLA willfully violated the automatic stay by recording its claim of lien post-petition and then violated the discharge injunction by recording another claim of lien based on an allegedly discharged debt, allegedly issuing post-discharge payment demands, pursuing foreclosure, and allegedly engaging in coercive conduct, including eviction-related actions. Mr. Papagno seeks sanctions, damages, and enforcement of the discharge protections. NOLA, on the other hand, contends that it only took legally permissible steps to enforce its in rem rights with respect to the condominium based on its statutory lien.

1.     *Condominium Association Statutory Liens Under Florida Law.*

"Condominiums and the forms of ownership interests therein are strictly creatures of statute."[22] Under Florida law, a condominium is created by recording a declaration of condominium in the public records of the county where the land is located.[23] This declaration "strictly governs the relationships among the

---

[21] 11 U.S.C. § 350(b).

[22] *Woodside Vill. Condo. Ass'n, Inc. v. Jahren*, 806 So. 2d 452, 455 (Fla. 2002) ("In Florida, Chapter 718, Florida Statutes, known as Florida's 'Condominium Act,' gives statutory recognition to the condominium form of ownership of real property and establishes a detailed scheme for the creation, sale, and operation of condominiums.").

[23] *Id.*; *see also* Fla. Stat. § 718.104(2) ("A condominium is created by recording a declaration in the public records of the county where the land is located, executed and acknowledged with the requirements for a deed.").

condominium unit owners and the condominium association."[24] "[B]ecause condominiums are a creature of statute[,] courts must look to the statutory scheme as well as the condominium declaration and other documents to determine the legal rights of owners and the association."[25]

Here, the *Declaration of NOLA Lofts Condominium I, A Condominium* was recorded in the public records of Broward County, Florida on February 2, 2005.[26] Referencing the Florida Condominium Act, section 2.1 of the Declaration defines the "Act" to mean "the Florida Condominium Act (Chapter 718 of the Florida Statutes) as it exists on the date hereof and as it may be hereafter renumbered."[27] This language is significant because under Florida law, a condominium's declaration "is governed by the substantive law in effect at the time of its recording unless the declaration specifically provides that it will be subject to Florida statutory association law 'as amended from time to time.'"[28] Thus, because the declaration did not state that it was subject to the Florida Condominium Act "as it may be amended from time

---

[24] *Woodside Vill. Condo.*, 806 So. 2d at 456.
[25] *Id.*
[26] *See* OR Book 38993, Pages 1450–1545, Pub. Recs. of Broward Cnty., Fla. (Feb. 2, 2005). Mr. Papagno's filings included portions – but not all – of the condominium declaration. At the conclusion of the March 4 hearing, the Court asked the parties if there were any other papers the Court needed to consider in order to rule. Mr. Papagno responded that the Court needed the condominium declaration. Counsel for NOLA did not dispute that, but pointed out that the only relevant provision would be section 13. After the hearing, Mr. Papagno then filed with the Court only section 13 of the declaration. Dkt. No. 43. But Mr. Papagno's argument about "*Kaufman*" language (discussed next), required the Court to review the entire declaration. Because the condominium declaration is a publicly recorded official government land record that is not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, *see* Fed. R. Evid. 201(b)(2), the Court may take judicial notice of it on its own, *see* Fed. R. Evid. 201(c)(1).
[27] OR Book 38993, at p. 1450, § 2.1.
[28] *In re Clement*, 644 B.R. 917, 921 (Bankr. S.D. Fla. 2022) (citing *Kaufman v. Shere*, 347 So. 2d 627 (Fla. 3d DCA 1977)).

to time,"[29] the declaration "remains subject to the substantive law in effect when it

was created unless and until the declaration is amended."[30]

Section 13.3 contains the relevant provisions here, and provides as follows:[31]

13.3 <u>Default in Payment of Assessments for Common Expenses</u>. Assessments and installments thereof not paid within ten (10) days from the date when they are due shall bear interest at fifteen percent (15%) per annum from the date due until paid and shall be subject to an administrative late fee in an amount not to exceed the greater of $25.00 or five percent (5%) of each delinquent installment. *The Association has a lien on each Condominium Parcel for any unpaid Assessments on such Parcel, interest thereon and reasonable attorneys fees and costs incurred by the Association incident to the collection of the Assessments or enforcement of the lien. Except as set forth below, the lien is effective from, and shall relate back to, the date of the recording of this Declaration. However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien. The lien shall be evidenced by the recording of a claim of lien in the Public Records of the County.* To be valid, the claim of lien must state the description of the Condominium Parcel, the name of the record Owner, the name and address of the Association, the amount due and the due dates, and the claim of lien must be executed and acknowledged by an officer or authorized agent of the Association. The claim of lien shall not be released until all sums secured by it (or such other amount as to which the Association shall agree by way of settlement) have been fully paid or until it is barred by law. No such lien shall be effective longer than one (1) year after the claim of lien has been recorded unless, within that one (1) year period, an action to enforce the lien is commenced. The one (1) year period shall automatically be extended for any length of time during which the Association is prevented from filing a foreclosure action by an automatic stay resulting from a bankruptcy petition filed by the Owner or any other person claiming an interest in the Unit. The claim of lien shall secure (whether or not stated therein) all unpaid Assessments as well as interest and all reasonable costs and attorneys' fees incurred by the Association, which are due and which may accrue subsequent to the recording of the claim of lien and prior to the entry of a final judgment of foreclosure. Upon payment in full, the person making the payment is entitled to a satisfaction of the lien in recordable form. The Association may bring an action in its name to foreclose a lien for unpaid

---

[29] *Kaufman*, 347 So. 2d at 628; *see Clement*, 644 B.R. at 921.
[30] *Clement*, 644 B.R. at 922.
[31] OR Book 38993, at p. 1461, § 13.3 (emphasis added).

Assessments in the manner a mortgage of real property is foreclosed and may also bring an action at law to recover a money judgment for the unpaid Assessments without waiving any claim of lien. The Association is entitled to recover its reasonable attorneys' fees incurred either in a lien foreclosure action or an action to recover a money judgment for unpaid Assessments.

As an additional right and remedy of the Association, upon default in the payment of Assessments as aforesaid and after thirty (30) days' prior written notice to the applicable Unit Owner and the recording of a claim of lien, the Association may accelerate and declare immediately due and payable all installments of Assessments for the next twelve (12) months. In the event that the amount of such installments changes during the twelve (12) month period, the Unit Owner or the Association, as appropriate, shall be obligated to pay or reimburse to the other the amount of increase or decrease within ten (10) days of same taking effect.

Similarly, section 718.116 of the Florida Condominium Act, as in effect in 2005 (the year the condominium declaration was recorded),[32] provided in relevant part as follows:[33]

(5)(a) *The association has a lien on each condominium parcel to secure the payment of assessments. Except as otherwise provided in subsection (1) and as set forth below, the lien is effective from and shall relate back to the recording of the original declaration of condominium*, or, in the case of lien on a parcel located in a phase condominium, the last to occur of the recording of the original declaration or amendment thereto creating the parcel. *However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located.* Nothing in this subsection shall be construed to bestow upon any lien, mortgage, or certified judgment of record on April 1, 1992, including the lien for unpaid assessments created herein, a priority which, by law, the lien, mortgage, or judgment did not have before that date.

(b)  To be valid, a claim of lien must state the description of the condominium parcel, the name of the record owner, the name and address of the association, the amount due, and the due dates. It must be executed and acknowledged by an officer or authorized agent of the

---

[32] *See Clement*, 644 B.R. at 921; *Kaufman*, 347 So. 2d at 628.
[33] Fla. Stat. 718.116(5)(a)–(b) (2005) (emphasis added).

association. No such lien shall be effective longer than 1 year after the claim of lien was recorded unless, within that time, an action to enforce the lien is commenced. The 1-year period shall automatically be extended for any length of time during which the association is prevented from filing a foreclosure action by an automatic stay resulting from a bankruptcy petition filed by the parcel owner or any other person claiming an interest in the parcel. The claim of lien shall secure all unpaid assessments which are due and which may accrue subsequent to the recording of the claim of lien and prior to the entry of a certificate of title, as well as interest and all reasonable costs and attorney's fees incurred by the association incident to the collection process. Upon payment in full, the person making the payment is entitled to a satisfaction of the lien.

Thus, both the declaration and the version of section 718.116 in effect at the time the declaration was recorded provide that the condominium association has a lien on each condominium parcel to secure payment of assessments, and that the lien relates back to and is effective from the date the condominium declaration was recorded, which here was February 2, 2005.[34] Both the declaration and the statute then provide that as to first mortgages the lien is only effective from and after the recording of a claim of lien in the public records.[35] Here, however, there was no first

---

[34] OR Book 38993, Page 1450, Pub. Recs. of Broward Cnty., Fla. (Feb. 2, 2005).

[35] The relevant provision from the declaration states:

> Except as set forth below, the lien is effective from, and shall relate back to, the date of the recording of this Declaration. However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien. The lien shall be evidenced by the recording of a claim of lien in the Public Records of the County.

The relevant provision of the statute states:

> The association has a lien on each condominium parcel to secure the payment of assessments. Except as otherwise provided in subsection (1) and as set forth below, the lien is effective from and shall relate back to the recording of the original declaration of condominium, . . . However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located.

That the statute says, as to first mortgages of record, "the lien is effective from and after recording of a claim of lien in the public records of the county," but the declaration says "the lien is effective from and after recording of a claim of lien. The lien shall be evidenced by the recording of a claim of lien in the Public Records of the County," is an immaterial difference. Read in context, it is clear – where

10

mortgage. Accordingly, under both the declaration and Florida Statutes § 718.116,[36] NOLA has a statutory lien on Mr. Papagno's unit to secure unpaid assessments, interest, attorney's fees, and costs, which lien is not dependent on the filing of a claim of lien to be effective. The lien is effective from the date the condominium declaration was recorded.

A claim of lien, however, is materially different from the lien itself under Florida law. A lien in favor of a condominium association arises by operation of law upon the filing of – and is effective from the date of recording of – a declaration of condominium.[37] A claim of lien, on the other hand, is a formal document that the association records in the public records as a predicate to enforcing its lien rights. Under Fla. Stat. § 718.116, before an association can initiate judicial foreclosure proceedings, it must record its claim of lien.[38] But recording the claim of lien has no bearing on whether the association has a lien – it has one as a matter of law.

So here, under both the declaration and Florida law, NOLA had a lien on Mr. Papagno's condominium unit when he filed for bankruptcy. And NOLA was not

---

there is no first mortgage of record – that the association has lien as a matter of law and need not record a claim of lien to perfect it.

[36] This includes under both the 2005 version of § 718.116(5)(a), and the current (2025) version, which today reads in relevant part as follows:

> The association has a lien on each condominium parcel to secure the payment of assessments. Except as otherwise provided in subsection (1) and as set forth below, the lien is effective from and shall relate back to the recording of the original declaration of condominium, . . . However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located.

[37] *Calendar v. Stonebridge Gardens Section III Condo. Ass'n, Inc.*, 234 So. 3d 18, 19–20 (Fla. 4th DCA 2017); Fla. Stat. § 718.116(5)(a).

[38] *AGM Inv'rs, LLC v. Bus. Law Group, P.A.*, 219 So. 3d 920, 925 (Fla. 2d DCA 2017) ("The association's recording of a claim of lien is legally necessary to its institution of judicial foreclosure proceedings to enforce that lien.") (citing Fla. Stat. § 718.116(5)(b), (5)(c), (6)(b)).

required to have filed any claim of lien to validate its lien rights – they existed (and

continue to exist) as a matter of law.[39]

> ### 2.   *The Automatic Stay.*

The automatic stay of 11 U.S.C. § 362(a) arises upon the filing of a bankruptcy

case. As relevant here, the automatic stay stops the following actions:[40]

> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . ., or to recover a claim against the debtor that arose before the commencement of the case . . .;

* * *

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

* * *

The automatic stay remains in place until the earlier of the time the case is closed,

the case is dismissed, or a discharge is granted or denied.[41]

NOLA originally recorded a claim of lien for unpaid assessments on June 20,

2024 – three days after Mr. Papagno filed for bankruptcy. Mr. Papagno contends that

---

[39] *Calendar*, 234 So. 3d at 19–20 ("the lien in favor of the association was created by the statute itself. Since there is no indication that a first mortgage was at issue in this case, the association was not required to file a claim to validate its lien.").

[40] 11 U.S.C. § 362(a).

[41] 11 U.S.C. § 362(c)(2).

12

under section 362(a)(4), this violated the automatic stay. At the March 4 hearing, NOLA did not dispute the fact that it recorded this claim of lien after Mr. Papagno had filed for bankruptcy. Nor did it dispute the legal conclusion that this act violated the automatic stay.

Mr. Papagno, however, argues that NOLA's recording of this claim of lien was "willful," such that under 11 U.S.C. § 362(k) he is entitled to damages. Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[42] Thus, under the statute, it is not enough that a violation of the stay occurred; that violation must have been "willful." A stay violation is willful if the party who violated the stay (1) knew the automatic stay was in effect, and (2) intended the actions that violated the stay.[43] "It does not matter whether the violator specifically intended to violate the stay; all that matters is that the violator intended to perform the act"[44] while knowing that the automatic stay was in effect.

NOLA admits that Mr. Papagno filed for bankruptcy on June 18, 2024, that NOLA received notice of his bankruptcy filing on June 19, 2024, and that it recorded its claim of lien on June 20, 2024. It argued at the March 4 hearing, however, that the claim of lien had been prepared on June 18 (the day Mr. Papagno filed for bankruptcy, at which time NOLA did not know he had filed for bankruptcy), but that

---

[42] 11 U.S.C. § 362(k)(1).

[43] *In re Lyubarsky*, 615 B.R. 924, 929 (Bankr. S.D. Fla. 2020) (citing *Jove Eng'g v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1555 (11th Cir. 1996)).

[44] *In re Meredith*, 672 B.R. 802, 806 (Bankr. S.D. Fla. 2025).

due to Juneteenth National Independence Day it could not record the claim of lien until June 20, when it did so.

Although the Court's docket shows that notice of Mr. Papagno's bankruptcy case was not mailed to NOLA until June 20, 2024,[45] Mr. Papagno asserts – and NOLA does not appear to contest – that on June 19, 2024, Mr. Papagno hand-delivered notice of his bankruptcy filing to an attorney for NOLA.[46] What is contested, however, is whether NOLA's filing of the claim of lien after one of its attorneys had received actual notice of Mr. Papagno's bankruptcy filing was willful, and if it was willful, whether Mr. Papagno has been injured, and if he has been injured, what damages he has suffered. To make this determination, the Court must schedule an evidentiary hearing, which it will do by separate order. But for purposes of this order – and all the other relief Mr. Papagno seeks besides damages for violation of the automatic stay – the import of this claim of lien having been filed in violation of the automatic stay is simply that it is void.[47]

### 3. *The Discharge Injunction.*

Mr. Papagno also argues that NOLA has violated the discharge injunction by recording a second claim of lien after he received his discharge, allegedly issuing post-discharge payment demands, pursuing foreclosure, and allegedly engaging in coercive conduct, including eviction-related actions. NOLA, however, asserts that its statutory lien was not discharged in bankruptcy, that the discharge injunction does

---

[45] Dkt. No. 12.
[46] *See* Dkt. No. 37, at 1, 10.
[47] *See Lee*, 102 F.4th at 1180 ("actions taken in violation of the automatic stay are void and without effect").

14

not apply to its lien, and that it is simply pursuing its in rem rights based on its statutory lien. The Court agrees.

To begin, as the Court determined, the claim of lien filed on June 20, 2024, is void. But this does not mean – as Mr. Papagno seems to suggest – that NOLA's statutory lien did not exist when he filed for bankruptcy or that as a result of having received a discharge, NOLA is now an unsecured creditor whose entire claim was discharged. There is no dispute that Mr. Papagno was liable to NOLA for unpaid assessments when he filed for bankruptcy.[48] And this Court has concluded that NOLA has a lien, as a matter of law, to secure this claim. That NOLA then recorded a claim of lien after Mr. Papagno had filed for bankruptcy – which the Court determined to be void – does not, however, eliminate NOLA's statutory lien that existed when Mr. Papagno filed this case.

As discussed, a condominium association is not required to file a claim of lien to validate or enforce its statutory lien to secure the payment of assessments if a declaration of condominium was recorded and there is no first mortgage. Judge A. Jay Cristol addressed a similar scenario in *In re Valcarcel*:[49]

> It is undisputed there were unpaid condominium assessments due and owing at the time the Debtor filed the Chapter 7 Case. It is also undisputed Jade [Winds Association, Inc.] had not filed a claim of lien in the public records at that time. In relation to amounts arising before the order for relief, Debtor argues: "The claim of lien was filed after debtor filed a Chapter 7 bankruptcy. The claim of lien improperly secures amounts which were discharged in the debtor's chapter 7 filing.

---

[48] *See* Dkt. No. 1, at 28 (listing NOLA as a creditor for "HOA Assessments"). Mr. Papagno may dispute the amount of the unpaid assessments for which he is liable, but the Court can conclude from his bankruptcy schedules that he does not dispute that assessments in some amount were owing when he filed for bankruptcy.

[49] 2013 WL 4097193 (Bankr. S.D. Fla. 2013).

> Suggested Treatment: the amount claimed should be classified as unsecured." . . .
>
> This argument overlooks Fla. Stat. § 718.116(5)(a), which provides, the association has a lien on each condominium parcel to secure the payment of assessments, and except as to first mortgagees in relation to whom the lien is effective only upon recording a claim of lien in the public records, the lien is effective from and shall relate back to the recording of the original declaration of condominium. . . . The declaration of condominium for Jade Winds Group Allamanda Gardens was recorded on January 25, 1968, over forty years before the Chapter 7 Case was filed.[50]

Judge Cristol held that the real property remained liable for the full amount of Jade's lien after a chapter 7 discharge and that post-discharge, while Jade was prohibited from pursuing discharged amounts in personam, it retained its in rem lien in the full amount of its claim and was entitled to pursue all of its in rem rights.[51] Judge Cristol also rejected the argument that Jade's failure to object to the debtor's characterization of Jade's claim as wholly unsecured on his schedules or to otherwise participate in the debtor's no-asset chapter 7 case somehow avoided or eliminated the statutory lien.[52]

*Valcarcel* is similar to Mr. Papagno's case. Here, Mr. Papagno owed unpaid assessments to NOLA as of the petition date, but NOLA had not yet recorded a claim of lien. Mr. Papagno listed NOLA as an unsecured creditor on his schedules,[53] and he received a chapter 7 discharge.[54] NOLA did not participate in Mr. Papagno's no-asset

---

[50] *Id.* at *2 (cleaned up); *see* 4 COLLIER ON BANKRUPTCY ¶ 523.24 (16th ed. 2026) (when a lien for unpaid condominium association fees exists "it is unaffected by the discharge of the debtor's unpaid prepetition obligations.") (citing 11 U.S.C. § 524(a)(2) (discharge injunction is limited to actions to collect a debt as a personal liability of the debtor)).

[51] *Valcarcel*, 2013 WL 4097193, at *2.

[52] *Id.* at *3.

[53] *See* Dkt. No. 1, at 28.

[54] Dkt. No. 23.

chapter 7 bankruptcy case. Nonetheless, as Judge Cristol did in *Valcarcel,* the Court concludes here that NOLA's statutory lien – in its full amount – survived Mr. Papagno's bankruptcy case and was not discharged. As a result, the lien is unaffected by the discharge injunction, and NOLA was and is free to pursue its in rem rights with respect to Mr. Papagno's condominium unit. Accordingly, NOLA has not violated the discharge injunction, and so to this extent, Mr. Papagno's motion will be denied.

> C.     <u>Motion for Declaratory Relief</u>.

In his Motion for Declaratory Relief,[55] Mr. Papagno seeks a series of declaratory rulings clarifying the relationship between federal bankruptcy law and Florida condominium lien statutes, specifically as they relate to the validity and enforceability of liens arising from pre-petition notices and post-petition or post-discharge actions. The motion frames these issues as part of a broader systemic confusion regarding how condominium lien rights are affected by bankruptcy, and asserts that without clear guidance, debtors are subjected to improper collection efforts and prolonged litigation. The Court disagrees. For the reasons discussed, the law is clear that NOLA has a lien, and that that lien survives Mr. Papagno's bankruptcy case. His motion for declaratory relief will therefore be denied.

> D.     <u>Motion to Stay Eviction Judgment</u>.

In his Motion to Stay Eviction Judgment,[56] Mr. Papagno seeks emergency injunctive relief to halt enforcement of a state court eviction-related judgment dated

---

[55] Dkt. No. 33, as amended by Dkt. No. 39.
[56] Dkt. No. 32, as amended by Dkt. No. 38.

17

January 20, 2026. Specifically, he asserts that the eviction and related enforcement actions are intertwined with alleged discharge violations and constitute coercive efforts to collect a discharged debt. NOLA disagrees, asserting that the eviction-related action is unrelated to any discharged debt or to its statutory lien for assessments, and instead arises from post-petition violations of condominium rules, including for having unauthorized occupants, property misuse, and safety concerns. The Court agrees with NOLA. The eviction-related judgment is based on Mr. Papagno's post-petition violations of condominium rules unrelated to the pre-petition debt he owed to NOLA for unpaid assessments. NOLA is not trying to enforce any discharged debt and is not violating the discharge injunction in any way by seeking – and then enforcing – the eviction-related judgment. The Court will therefore deny Mr. Papagno's Motion to Stay Eviction Judgment.

E.     Motion to Consolidate Hearings.

Lastly, Mr. Papagno has moved to consolidate the hearings on his various motions. Insofar as the Court set all his motions for hearing on the same day – March 4, 2026 – his motion will be denied as moot.

## IV.   Conclusion.

For the reasons discussed, it is **ORDERED** that:

1.     The Motion to Reopen[57] is **GRANTED**.

2.     The Motion for Contempt[58] is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

---

[57] Dkt. No. 29.
[58] Dkt. No. 31.

3.    The Motion for Contempt[59] is **GRANTED** to the extent it seeks a determination that NOLA violated the automatic stay by recording its claim of lien on June 20, 2024. The Court will, by separate order, set an evidentiary hearing to determine (a) whether the stay violation was willful, (b) if willful, whether Mr. Papagno was injured by the stay violation, and (c) if he was injured, what damages, if any, he suffered as a result.

4.    The Motion for Contempt[60] is **DENIED** to the extent it seeks a determination that NOLA violated the discharge injunction or any other relief.

5.    The Motion to Stay Eviction Judgment,[61] as amended,[62] is **DENIED**.

6.    The Motion for Declaratory Relief,[63] as amended,[64] is **DENIED**.

7.    The Motion to Consolidate Hearings[65] is **DENIED AS MOOT**.

# # #

*Copies furnished to all interested parties by the Clerk of Court.*

---

[59] *Id.*
[60] *Id.*
[61] Dkt. No. 32.
[62] Dkt. No. 38.
[63] Dkt. No. 33.
[64] Dkt. No. 39.
[65] Dkt. No. 34.